Henry G. Smith, J.,
delivered the opinion of the Court.
' Trigally was arraigned, tried, convicted and fined ten dollars, before and by the Commissioners of the Metropolitan Police of Memphis, on the charge of drunkenness in violation of the ordinance of the City of Memphis, prohibiting and punishing drunkenness ,in the city. The testimony upon the trial before the Police' Commissioner, was reduced to writing by him in the progress of the trial. The- defendant prayed and obtained an appeal to the Municipal Court of Memphis. A trial was had in . that court, and the judgment of the *384 Police Commissioner was affirmed; and from this judgment an appeal was granted to the defendant to the Supreme Court.
Upon the trial in the Municipal Court, the defendant demanded a jury, which was refused. The defendant objected to the reading of the testimony reduced to writing by the Police Commissioner. The objection was overruled, and the testimony was read; and upon that testimony, the conviction and judgment had before the Police Commissioner, were affirmed.
The errors assigned by Trigally, are:
First, The refusal of a trial by jury, and trial by the court.
Second, The admission of the testimony taken and reduced to writing by the Commissioner, upon the trial before him.
Third, That the ordinances and modes of procedure, are partial legislation, and not the law of the land.
Formerly, the tribunal which took cognizance of offenses of this kind against the city ordinances, was the city Recorder. Recently, and by Legislative Act, this jurisdiction was transferred to one of the three Commissioners of the Metropolitan Police.
Formerly, the appeal lay to the Law Court of Memphis. Now the appeal lies to the Municipal Court, and this by Act of the Legislature.
The proceeding in the present case, was in conformity with the mode prescribed by the Code, sec. 4264 to 4269 inclusive. Those sections authorize the judge of the court to try and determine cases of this kind, upon the evidence reduced to writing by the Commis *385 sioner, and such other testimony as may be offered by either party.
The allegation of error, proceeds on the assumption that the General Assembly of the State has not the power, under the Constitution, to deny to a defendant arraigned on such offense, before such a tribunal, and punishable by a small pecuniary penalty, trial by jury; or to admit, and convict a defendant upon, testimony of the kind employed in this case.
The clauses of the Constitution, which are supposed to prohibit the mode of proceeding in this case, are to be found in secs. 6 and 9 of the first Article. The former declares, “that the right of trial by jury, shall remain inviolate.” The latter declares, “that, in all criminal proceedings, the accused has the right to meet the witnesses face to face.”
The proper and settled construction of the constitutional provision which declares that the right of trial by jury shall rémain inviolate, is, that the right of trial by jury shall remain inviolate, as it existed at the formation of the Constitution. Cases which, before the Constitution, were not triable by jury, need not be made so now. Parties cannot now be deprived of trial by jury, who were entitled to demand it, at and before the formation of the Constitution. And, on the other hand, cases not having the right at that time, to demand a jury, cannot now demand a jury, as of right, because of the constitutional provision: McGinnis vs. The State, 9 Humph., 50, per McKinney; 27 New York, 147; 9 Ind., 558; 11 New Hamp., 19, and cases *386 cited iii Cooley’s Const. Lim., 410, n. 2; Sedg. Stat. and Const. Law, 548; 1 Bishop Crim. Law, sec. 758, n. 7.
Before the Constitution, divers actions between private persons, and prosecutions by the State for small offenses, were triable without a jury. Thus, by Act of 1741, chapter 14, section 6, justices of the peace were authorized to “convene before them,” persons committing the offenses designated, and to impose upon them fines and penalties as prescribed, and to set the offenders in the stocks, if they failed to pay the fines or penalties. Hunting, fishing, fowling, gaming, playing on the Lord’s day, were punishable by fine of ten shillings, proclamation money. Cursing, swearing, by common persons, were punishable by fine, two shillings and six pence for each and every oath. Cursing or swearing, by a public officer, ivas punished at the rate of five shillings for each and every oath. Getting drunk on Sunday, was fined five shillings; on any other day, two shillings and sixpence. . Fornication was fined twenty-five shillings. By Act of 1784, chapter 34, persons of ill fame, were forbidden to leave their county, without first obtaining a certificate from the sheriff of the county, or a justice of the peace, or the captain of his (the person of ill fame) company. If he left without the certificate, any person could apprehend and carry him before a justice of the .peace, who was authorized to fine him not more tli an forty shillings. These examples are enough to show, that, before the Constitution, punishments might be inflicted for small offenses, without the intervention *387 of a jury; and that the proceedings might be summary, and speedy, and efficient. Acts of the Legislature authorizing proceedings in the like manner, for the punishment of small offenses, were continued to be enacted, after the formation of the Constitution of 1796: See Acts of 1799, chapter 8; 1801, chapter 22; 1803, chapter 13 and chapter 47; 1813, chapter 135. Many of these laws have been carried into the Code, sections 1723 to 1728, inclusive; and proceedings are authorized to recover the penalties prescribed, without a jury: See 9 Humph., 50, per McKinney.
It is scarcely necessary, however, to ascertain that a jury was not allowed in cases of this kind, before the Constitution. Authorities may be found, which hold that small offenses of the present kind, are not embraced in such constitutional provision. Thus, in Georgia, the provision is held not. to prevent the enforcement of the by-laws of a municipal corporation, without a jury trial: 4 Ga. Rep., 509; 14 id., 354. And again, in Vermont, the provision is held not to be intended to apply to small offenses against police regulations of the State, such as violations of the prohibitory liquor law: 27 Vermont, 318; id., 325. See, also, Gray vs. State, 2 Harrington’s Del. Rep., 76, and 1 Bish. Crim. Law, sec. 758, n. 7.
City ordinances, prescribing pecuniary penalties of the kind under review here, and the court wherein and the mode of procedure whereby the ordinances are enforced, are not obnoxious to the constitutional rule known in Tennessee as “the law of the land,” or to any other constitutional provision. The Constitution *388 authorizes the Legislature to establish inferior courts, and “Corporation Courts, with such jurisdiction as may be deemed necessary:” Art. 1, section 6.
In regard to ordinances of the kind, their validity is unquestionable. The power of the General Assembly to create municipal corporations, is recognized, and therefore authorized, by the Constitution. Without such recognition or express authority, no doubt could be raised or entertained of the existence of the power. Municipal corporations, as means of local government, existed and were created before the Constitution was formed, and have been created and established during the whole existence of the State; and were governmental institutions derived from the country from which we took our origin.
The government of men aggregated in dense masses, must, of necessity, differ from that suitable to the sparse inhabitants of rural districts. ' It must be more prompt, summary, energetic and irresistible. Without such powers, it would be impossible to guard and maintain the safety of the people. The modes of pi’ocedure customary and suitable in the rural districts, to prevent and punish offenses against person and property, are utterly inadequate to the purpose, where men are aggregated in the dense masses of the cities. Hence the necessity and sanction, for an efficient organization of police power.'
Laws and regulations adequate to protect the safety, health, comfort and good neighborhood of people in rural districts, are utterly insufficient for such purpose n the cities. Numberless acts and negligences of men *389 in the country, wMeh are harmful to nobody, are greatly dangerous and injurious to the inhabitants of cities. Hence the necessity and sanction of particular and minute regulations prescribed by municipal governments, touching and penetrating the life and conduct of persons in cities, which are unnecessary, and would be intolerable, to enact and enforce upon the inhabitants of the country. Ordinances and by-laws of this kind, are enacted for the government of men in cities, and have been so done in all the States of the Union, from the first colonization of the country, and have been so done in England from the earliest period of its known history. These ordinances, though peculiar to the municipality which enacts and enforces them, and though different from the general laws of the State applicable to all the people of the State, have never, for such reasons, been supposed to be invalid. They have not been deemed obnoxious to the objection of being partial laws, or not laws of the land.
On the contrary, they are regarded with particular favor. The fundamental and distinctive principle of English and American government, is, to decentralize administrative and legislative power. To the general or central government, is bestowed the enactment and execution of laws which concern the people generally of the whole State, and which are properly and beneficially applicable to the whole people. To the local and small sub-divisions and districts and communities of the people, are confided the exercise of the powers of legislation and administration, suitable to the peculiar needs and purposes of those small localities. Govern- *390 menfc organized upon this principle, is supposed to be more consonant with the freedom of the people, and better adapted to promote the safety and prosperity of the people, than where the legislation and administration are remote, and concentrated in the hands of the central authorities. However, this may be, local government and local regulations, and especially municipal incorporations and powers, are special and established and legitimate agencies, and exercise of governmental power in the State of Tennessee.
It thus appears that the ordinances and modes of administration of municipal corporations, are not invalid as partial laws, for the reason that they are applicable only to persons residing or being within the limits of the municipality. Of course, if they be repugnant to any provisions of the Constitution, or to any statute of general application to the people of the State, they are void. But they are not void because of local application, or local enforcement, or because not similar to laws and legal proceedings as administered in the courts generally of the State.
With these views, it is not seen that the evidence dmitted upon the trial in the Municipal Court, was mproperly admitted. The testimony was taken down by the Police Court at the trial, there in che presence of the defendant, face to face with the witness, an with all opportunities of cross-examination and development of the whole testimony, in the power of the witness to depose. And upon the trial in the Municipal Court, upon appeal, the defendant might have had any other testimony within his power to procure; *391 and also, the testimony of the same witness, could he be obtained.
There is no error in the denial of a jury to the defendant, nor in the admission of the testimony reduced to writing by the Police Commissioner; and the judgment is affirmed.